ALBANY,<br>August, 1810.<br><br>MOSES and<br>others<br>v.<br>COL. INS. CO.

New trial granted.

————❄❄———

MOSES and others *against* THE COLUMBIAN INSURANCE COMPANY.

THIS was an action on an open policy of insurance, on 300 barrels of flour, the property of the plaintiffs, laden on board of the ship *Herkimer*, on a voyage from *New-York* to *London*. The sum insured in the policy, was 2,750 dollars, at a premium of five *per cent*. The amount of interest covered, was 2,691 dollars and 14 cents.

The *Herkimer* was a general ship, and sailed from *New-York*, on the voyage insured, the 18th of *March*, 1807, with a cargo belonging to different shippers. were so much damaged, that it became necessary to sell them at *Norfolk*, the ship went from necessity. The 123 barrels of flour, lost by the *jettison*, invoice price, together with the 30 barrels, sold at *Norfolk*, after deducting amounted to less than a moiety of the prime cost of the whole 300 barrels. The insured, on hearing of the loss which had been sustained, abandoned; but the ship was afterwards repaired, and arrived at *London* in safety, where she delivered the residue of the flour, being 147 barrels, to the consignees. It was held, that there being a loss of more than a moiety of the article specifically insured, the insured had a right to abandon, and was entitled to recover for a total loss.

Insurance on<br>300 barrels of<br>flour, from *New-<br>York* to *London*.<br>During the voy-<br>age, it became<br>necessary, for<br>the preservation<br>of the ship, to<br>throw over a<br>part of the car-<br>go, among which<br>were 123 barrels<br>of the flour in-<br>sured, and 30<br>barrels more<br>into which port<br>estimated at the<br>the net proceeds,

Meeting with tempestuous weather, and having sprung a leak, which increased so as to render, it necessary to seek the nearest port, she put into *Norfolk*, on the 17th of *April*, after having sustained considerable damage, and having been obliged to throw over a part of her cargo, among which were 123 barrels of the flour belonging to the plaintiffs. On the 25th of *April*, that part of the cargo which was damaged by the perils of the sea, was sold at *Norfolk;* among which were 30 barrels of flour, belonging to the plaintiffs, the prime cost of which was 269 dollars and 12 cents; but, on account of its being damaged, it sold only for 5 dollars and 67 cents *per* barrel, producing the net sum of 165 dollars.

The ship took in, at *Norfolk*, (to replace that part of the cargo thrown overboard and sold,) 32 hogsheads and 5 barrels of tobacco, 36 ceroons of indigo, and 31 bales of cotton, for *London*, the freight of which amounted to 150 pounds sterling.

After being repaired, the ship left *Norfolk*, in *June*, and arrived in *London*, the latter end of *July* following.

On the 22d of *June*, 1807, the plaintiffs wrote to the defendants, stating, that the *Herkimer* had met with bad weather and sprung a leak; that 148 barrels of the flour insured, had been thrown overboard; that 25 barrels being damaged, had been sold at *Norfolk*, and the remaining 127, sent in the ship to *London;* and that they, therefore, abandoned the whole to the defendants, and claimed of them payment for a total loss. This letter was accompanied with the usual proofs of interest and loss.

By letters from the consignees in *London*, dated the 16th of *September*, and the 5th of *November*, 1807, it appeared that they had received 147 barrels of flour, belonging to the plaintiffs, that 21 barrels were damaged, and sold at 32 shillings a barrel, and the remainder at 34 shillings and 6 pence *per* barrel.

·On the 14th of *January*, 1808, the plaintiffs again
wrote to the defendants, that they had received an' ac-
count of sales from *London*, from which it appeared, that
14.7 barrels only of the flour had been received by their
consignees ; and adverting to the errors, as to the ·quan-
tity lost, in their former letter, they confirmed and re-
newed the abandonment made on the 22d of *June.*

In *February*, 1808, the account of sales at *Norfolk*,
was delivered to the defendants, and an action com-
·menced against them, as for a total loss, stated to have
happened by a *jettison* of a part, and the damaged state
of the remainder.

By the account of the adjustment and settlement of
the general average and loss, at *London*, which was
delivered to the defendants in *June*, 1808, it ap-
peared that the amount payable to the plaintiffs on the
·adjustment,·including the proceeds of the flour, was
430 dollars and 66 cents, which sum was received by
the consignees in *London*, and passed to the credit of
the plaintiffs.(*a*)

A verdict was found for the plaintiffs, subject to the
opinion of the court, on the above case, as to the question,
whether the plaintiffs were entitled to recover for a total
or a partial loss; the amount to be ascertained by
persons, named by the parties, according to the opinion
of the court.

|  |  | *Dolls. Cts.* |
|---|---|---|
| (*a*) The 300 barrels cost |  | 2,691 |
|  | Half is | 1,345 50 |

*Dolls.*

123 thrown into the sea and 30 sold at *Norfolk*, cost } 1,377

Deduct net proceeds of the 80 barrels damaged and sold at *Norfolk*, } 165

Amount of loss, according to the value or prime cost, } 1,212

*T. L. Ogden*, for the plaintiffs. The contract of insurance is on the subject insured for the voyage. If the subject be lost, or the voyage defeated, the insured may abandon. The contract between the parties was, that the goods insured should arrive at the port of *London*. But less than a moiety of them arrived. What is a loss of voyage? What frustrates an adventure? What renders a voyage not worth pursuing? It is where a specific article is insured, and a moiety of it is lost.*

The case of *Vandenheuvel* v. *The United Insurance Company*,† is perfectly analogous to the present. The court said, that "where a moiety of any portion of a cargo, specifically underwritten, has been lost, the owner may abandon, however small its proportion may be to the whole lading." It is enough that more than half of the specific subject insured has been lost.‡ The value is not to be regarded in such a case.

*C. I. Bogert* and *S. Jones*, jun. contra. The rule is, that the insured may abandon, when there has been a deterioration to more than half the value of the subject insured. The whole amount of the *jettison* does not make a technical total loss; and if the loss on the sale of the 30 barrels at *Norfolk* is added to that amount, it will not equal one half of the value of the article insured. Suppose that 160 barrels had been damaged, the insured would have no right to abandon, until the extent of the damage was ascertained. And the *quantum* of damage is to be ascertained by a survey,§ not by a sale of the goods. How can there be a loss of voyage, when the vessel proceeded, and arrived at the port of her destination, with the residue of her cargo? The rule laid down in *Vandenheuvel* v. *The United Insurance Company*, does not apply, unless there has been, in fact, a deterioration of the goods to half their value.

* *Marshall*, b. 1. c. 13. s. 1. *Park*, 193. 198.

† 1 *Johns. Rep.* 406. 411.

‡ 1 *Term Rep.* 187. *Cazalet* v. *St. Barbe*.

§ 1 *Johns. Rep.* 339. *Ludlow* v. *Columbia Insurance Company*.

*Hoffman*, in reply. This was an insurance on a speǧ-
cific number, being 300 barrels. By the *jettison*, 123
barrels were completely lost, and 30 were so much da-
maged, that they were necessarily sold, and could not
be transported to the port of destination. The vessel, it
is true, afterwards, proceeded to the port of destination,
with the residue of the cargo; but the insurance is, that
the goods insured shall arrive at the destined port. Sup-
pose only 10 barrels had remained; would there not have
been a loss of the voyage, a frustration of the adventure?
Or, suppose the whole had been damaged and sold at
*Norfolk*, and the net proceeds had amounted to more
than the invoice price; would not this have been a loss of
the voyage? The inquiry as to a moiety of the *value* being
lost, takes place only, when the goods arrive at the port
of destination. In the case of *Ludlow* v. *The Colum-
bian Insurance Company*, the goods might have gone to, and
did actually reach the port of destination, after the acci-
dent. In the present case, a moiety of the goods did not
arrive at *London*. A loss of more than a moiety happen-
ing at an intermediate port, has ever been held a suffi-
cient ground of abandonment.

VAN NESS, J. delivered the opinion of the court. The
question here is, not whether the moiety of the whole
cargo on board the ship was lost; but whether there has
been a loss of a moiety of the property specifically in-
sured by the plaintiffs, at any period of the voyage?

" In settling and distributing an average loss, it is pro-
per to look to every thing on board; but where a moiety
of any portion, specifically underwritten, has been lost,
its owner may abandon, however small its proportion may
be to the whole cargo." (*Vandenheuvel* v. *United Insu-
rance Company*, 1 *Johns. Rep.* 411.)

This was an insurance, upon an adventure from *New-
York* to *London;* and if this has been frustrated, by any

ALBANY,
August, 1810.

MOSES and
others
v.
COL. INS. CO.

of the perils within the policy, the insured have a right to abandon, and recover as for a total loss. The contract between the parties is, that the whole of the *article insured* shall be delivered at the port of destination; and if a moiety should be lost in the transportation, by a peril within the policy, the insurer is liable for a total loss.

The plaintiffs calculated upon the delivery of the subject insured, at a particular market; and though it is true, that the insurer has nothing to do with the state of the market, yet he is answerable, in case the goods are not delivered there, either for a partial or total loss, according to circumstances. Here has been a loss of more than a moiety of the property insured, by the perils of the sea, in the course of the voyage; and within a reasonable time after advice of the loss, the insured abandoned, and they have done nothing to waive the abandonment since it was made.

Of the 300 barrels of flour insured, 123 were thrown overboard, and 30 barrels were so much damaged as to render a sale of them proper and necessary, on the arrival of the ship at *Norfolk*. Not more than 147 barrels, therefore, arrived at the port of delivery. The 30 barrels sold at *Norfolk*, were as much lost to the plaintiffs, within the meaning and spirit of the contract, as though they had been cast into the sea. They were lost to them, for all the useful and intended objects of the shipment; inasmuch as they were not in a state fit to be carried to the market to which they were intended to be *sent*.

The argument, on the part of the defendants is, that the loss arising from the *jettison*, and the damaged flour sold at *Norfolk*, estimating the flour at prime cost, and crediting the money, arising from the sale of the 30 barrels of damaged flour, amounted to less than a moiety of the prime cost of the whole 300 barrels; and that,

therefore, there was not such a loss as to authorize an abandonment.

This argument, at first view, appears plausible, but its fallacy is easily detected. The contract is not, that there shall be a delivery at *London*, of a part of the property insured, and so much money as will be equal to a moiety in value of the 300 barrels. The insurer undertook, that the whole of the *article insured* should arrive at the port of destination ; and the insured have nothing to do with the money for which the damaged goods were sold.

The sale became necessary by reason of an injury to the flour, for which the insurers are liable, and the proceeds of the sale, passed by the abandonment, to the insurers.

This being the only point insisted upon, on the argument, though several others were made, we are of opinion that the plaintiffs are entitled to judgment, as for a total loss : the amount to be ascertained according to the provisions of the case.

Judgment for the plaintiffs.